**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff/Respondent,**<br><br>**v.**<br><br>**ANTHONY DEAN PRESTEL,**<br><br>**Defendant/Petitioner.** | **Case No. 21-CR-020-JFH**<br>**Case No. 23-CV-140-JFH[1]** |

## OPINION AND ORDER

Before the Court are Defendant/Petitioner Anthony Dean Prestel's ("Defendant") *pro se* (1) Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 ("Original Motion") [Dkt. Nos. 77-78] and (2) Amended 28 U.S.C. § 2255 Motion ("Amended Motion") [Dkt. No. 94]. The Government opposes both Motions. Dkt. Nos. 83, 106. For the following reasons, Defendant's Motions are DENIED.

## BACKGROUND

### A. Defendant's Pre-*McGirt* State Conviction

On December 1, 2010, state law enforcement from Eufaula, Oklahoma, received a complaint that Defendant had child pornography on his laptop. Dkt. No. 51 at 6. After accepting an invitation to speak, Defendant met with a Eufaula detective on December 9, 2010, waived his *Miranda* rights, allowed law enforcement to search his laptop, and admitted there were images of child pornography on the laptop, including of him and his step-daughter, S.S. *Id.* The State of Oklahoma charged him with various child-pornography charges on December 15, 2010. *See Oklahoma v. Prestel*, Case No. CF-2010-302 (McIntosh Cty, Okla.).

---

[1] All citations to docket entries will reflect docket entries in case number 21-CR-020-JFH.

Based on the images discovered on Defendant's laptop, law enforcement interviewed S.S. ("Victim") on January 12, 2011. Dkt. No. 51 at 6. During that interview, the Victim—who was nine or ten years old—said Defendant inappropriately touched her on numerous occasions during 2010 and as early as "four or five years ago." *Id.* She also told law enforcement that Defendant would "touch [her] privates," "put his privates inside her privates," "put his privates inside where [she] goes poop," "puts it in my butt," and "licks her privates with his tongue." *Id.* She further told police he had taken pictures of her naked and had digitally penetrated her vagina. *Id.*

Law enforcement interviewed Defendant again on January 12, 2011. Dkt. No. 51 at 6. They presented Defendant with a *Miranda* rights waiver, which he signed, although he allegedly did not have counsel present. *Id.*; Dkt. No. 27 at 4. They then told Defendant what the Victim had alleged. Dkt. No. 27 at 4. In response, Defendant admitted he had sex with the Victim around fifty to seventy-five times from 2007 to November 2010. Dkt. No. 51 at 6. He also admitted to performing oral sex on her approximately twenty-five times during that period. *Id.* at 7. He further admitted to taking sexually explicit pictures of the Victim, which could be found on his laptop. *Id.* The State of Oklahoma subsequently charged him with first degree rape, forcible sodomy, and sexual abuse of a child on May 24, 2011. *See Oklahoma v. Prestel*, Case No. CF-2011-102 (McIntosh Cty, Okla.).

Over a year later, on November 29, 2012, Defendant pled guilty to possession of child pornography in CF-2010-302 and first-degree rape of a victim under age fourteen, forcible sodomy, and sex abuse to a child in case CF-2011-102. Dkt. No. 51 at 10-11. The state court sentenced him to twenty years of imprisonment in CF-2010-302 and thirty, twenty, and thirty-five years, respectively, in CF-2011-102. *Id.* All counts in both cases ran concurrently with each other.

**B. Defendant's Post-*McGirt* Federal Charges**

On July 9, 2020, the United States Supreme Court held that Congress never disestablished the Muscogee (Creek) Nation Reservation. *See McGirt v. Oklahoma*, 591 U.S. 894 (2020). Accordingly, the Muscogee (Creek) Nation Reservation remained "Indian country," under 18 U.S.C. §§ 1151(a) and 1153(a). Relevant here, if a crime occurs between certain individuals within "Indian country," then the United States may prosecute that crime under 18 U.S.C. § 1152, which provides that "the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States . . . shall extend to the Indian country." 18 U.S.C. § 1152. Importantly, § 1152 "pertains to interracial crimes only (*i.e.*, when the defendant is an Indian and the victim is a non-Indian, or vice versa)." *United States v. Keys*, 642 F. Supp. 3d 1294, 1297 (E.D. Okla. 2022) (quotations and citations omitted).

Because the Victim was a tribal member of the Choctaw Nation of Oklahoma [Dkt. Nos. 51 at 6; 94 at 1-3], Defendant was a non-Indian, and the crime allegedly occurred within the Muskogee (Creek) Nation Reservation, the Government indicted Defendant on February 24, 2021, in the United States District Court for the Eastern District of Oklahoma. Dkt. No. 2. Specifically, the Government charged Defendant with two counts of sexual abuse of aggravated sexual abuse in Indian country in violation of 18 U.S.C §§ 1151, 1152, 2241(c), and 2246(2)(A), and one count of sexual exploitation of a child/use of a child to produce a visual depiction in violation of 18 U.S.C. §§ 2251(a), and 2251(e). *Id.* at 1-2. In light of *McGirt* and the Government's federal charges, the McIntosh County District Court dismissed CF-2010-302 and CF-2011-102 and ordered the judgments vacated on May 6, 2021.

In his federal case, Defendant moved to the suppress oral and written statements he gave to state law enforcement on December 9, 2010, and January 12, 2011, the evidence seized from

his laptop, and "any and all evidence" resulting from the state investigation. Dkt. No. 27 at 1. In doing so, Defendant primarily argued the State of Oklahoma lacked jurisdiction to investigate his crimes under *McGirt* and that the good-faith exception to the Fourth Amendment's exclusionary rule did not apply. *Id.* at 5-8. He also argued the state court's failure to appoint counsel at his initial arraignment violated his Sixth Amendment rights and tainted all subsequent investigations. *Id.* at 8-10. He further argued Defendant's *Miranda* waivers were unknowing and involuntary, and his statements to law enforcement were unreliable. *Id.* at 10-14.

**C. Defendant's Guilty Plea, Sentencing, and Post-Conviction Actions**

However, before responding to the motion to suppress, the Government and Defendant reached a Rule 11(c)(1)(C) plea agreement. Defendant agreed to plead guilty to Count One of an Information charging him with sexual abuse in Indian country. Dkt. Nos. 36, 42 at 1. In doing so, he admitted that:

> On a date uncertain in or about January 2010 to on or about December 31, 2010, within the Eastern District of Oklahoma, in Indian County, the defendant put his penis in S.S's vulva. At the time of the offense, S.S., an Indian, was 9 or 10 years old and incapable of appraising the nature of the conduct.

*Id.* at 2. Defendant further agreed to waive the right to directly appeal his sentence and conviction unless the sentence exceeded the statutory maximum. *Id.* at 4. He also "waive[d] the right to collaterally attack his conviction and sentence pursuant to 28 U.S.C. § 2255, except for ineffective assistance of counsel." *Id.* Finally, the parties agreed to a 300-month term of imprisonment, even though the applicable sentencing guidelines provided for an imprisonment range of 360 months to life. *Id.* at 8; Dkt. No. 51 at 14.

Defendant pled guilty before a Magistrate Judge on July 20, 2021. Dkt. Nos. 39-40. His sentencing hearing was held on February 28, 2022, where the Court accepted the plea agreement, sentenced Defendant to 300 months imprisonment on Count One, imposed a lifetime term of

supervised release, and imposed a variety of mandatory, standard, and special conditions. Dkt. No. 60. Some of these special conditions included prohibitions on possessing a computer with internet access without permission; owning or possessing a photographic or recording device without permission; and viewing/purchasing/possessing/distribution any pornographic materials without permission. *Id.* at 5.

Despite his appellate waiver, Defendant appealed the Court's imposition of the three special conditions identified above. *See United States v. Prestel*, 60 F.4th 616, 619 (10th Cir. 2023). However, the Tenth Circuit held that his appellate waiver barred these challenges and affirmed the Court's sentencing on February 21, 2023. *Id.*

Approximately two months later, Defendant timely filed his Original § 2255 Motion on April 28, 2023. Dkt. Nos. 77-78. Before the Court ruled on his Original Motion, Defendant moved under Federal Rule of Civil Procedure 15 to file an Amended § 2255 Motion on December 9, 2025. Dkt. No. 93. The Court granted leave and allowed Defendant to file his Amended Motion on December 10, 2025. Dkt. No. 94. Defendant ultimately seeks to vacate his conviction and sentence in both § 2255 Motions. Dkt. Nos. 83, 106.

**ANALYSIS**

Defendant's Original and Amended § 2255 Motions are denied. To explain why, this Opinion will proceed in three parts. Part I compares Defendant's Amended Motion to his Original Motion to determine if any of those claims relate back. Two amended claims relate back, but the rest are dismissed. Part II finds that Defendant's collateral-attack waiver is enforceable. Consequently, his guilty plea and waiver bar all but one amended claim and two original claims. Part III analyzes the substance of those remaining claims, all of which allege ineffective assistance of counsel. The Court ultimately finds those claims meritless.

## I. TWO AMENDED CLAIMS RELATE BACK TO THE ORIGINAL MOTION.

The Court will first examine whether Defendant's § 2255 claims are timely. "A defendant must file a § 2255 motion within one year of the date his conviction became final." *United States v. Chang Hong*, 671 F.3d 1147, 1150 (10th Cir. 2011) (citing 28 U.S.C. § 2255(f)(1)).[2] Here, Defendant appealed the imposition of several special conditions of his supervised release, which the Tenth Circuit affirmed on February 21, 2023. *See Prestel*, 60 F.4th 616. He did not petition for a writ of certiorari. Thus, the statute of limitations to move for relief under § 2255 began on May 22, 2023, and expired on May 22, 2024.

Neither party disputes that Defendant timely filed his Original § 2255 Motion on April 28, 2023. Dkt. Nos. 77-78. However, before the Court ruled on his Original Motion, Defendant filed his Amended § 2255 Motion on December 9-10, 2025. Dkt. No. 93. The Government argues his Amended Motion asserts new claims that were not in his Original Motion. Dkt. No. 106 at 5. And because he filed these new claims well beyond the statute of limitations, the Government contends they are untimely. *Id.* In response, Defendant asserts these amended claims "relate back" to his Original Motion under Fed. R. Civ. P. 15(c)(1)(B). Dkt. No. 107. He also argues that some of these claims "are critical jurisdictional element's [sic] that can never be waived" and that his actual innocence overcomes any untimeliness. *Id.* at 2, 12.

Ultimately, if an amended § 2255 motion presents an untimely claim, "that amended claim is treated as a second or successive habeas petition and the district court lacks jurisdiction to

---

[2] "[I]f a prisoner does not file a petition for writ of certiorari with the United States Supreme Court after [his] direct appeal, the one-year limitation period begins to run when the time for filing a certiorari petition expires." *United States v. Burch*, 202 F.3d 1274, 1279 (10th Cir. 2000). A petitioner seeking Supreme Court review of a judgment entered by a United States court of appeals must file his petition for writ of certiorari "within ninety days after entry of the [appellate court's] judgment." Sup. Ct. R. 13.1, 13.3.

consider it on the merits." *United States v. Roe*, 913 F.3d 1285, 1300 n. 22 (10th Cir. 2019) (citing *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-05 (10th Cir. 2000); *United States v. Trent*, 884 F.3d 985, 994 (10th Cir. 2018)). To determine whether an amended claim relates back under Fed. R. Civ. P. 15(c)(1)(B), the Court examines "whether the original and amended [motions] state claims that are tied to a common core of operative facts." *Roe*, 913 F.3d at 1298. "The answer to that question will often turn on whether the newly asserted claim would have had to be pleaded as a discrete claim . . . if it was set out in the original § 2255 motion." *Id.*

Liberally construed, Defendant asserted the following ten claims in his Original Motion:

- An ineffective assistance of counsel claim for failing to suppress evidence obtained by state law enforcement who allegedly lacked jurisdiction to search and seize that evidence in 2010 and 2011 under *McGirt* [Dkt. No. 78 at 9-13, 22];

- An ineffective assistance of counsel claim for failing "to bring forward forensic or verifiable testing of [Defendant's] computer," which state law enforcement found to have sexually explicit images of the victim and other minors [*Id.* at 9];

- An ineffective assistance of counsel claim for failing "to challenge the conviction under a 'laches challenge'" [*Id.* at 9-10, 25];

- An ineffective assistance of counsel claim for failing "to object to enhancements and allegations . . . [in] the [presentence investigation report]," failing to "produce relevant case law and precedence showing disparity," and failing to "move for sentence memorandum" [*Id.* at 9, 11, 17];

- An ineffective assistance of counsel claim for failing to "challenge terms and conditions set forth in [his] plea" [*Id.* at 9, 17];

- An ineffective assistance of counsel claim for failing "to communicate much of the facts, and virtually none of the defense strategy intended" [*Id.* at 9, 11-12, 15-17];

- An ineffective assistance of counsel claim for "failing to enact a witness management and mitigation strategy including a failure to exact and utilize the 'Confrontation Clause,' failure to cross-examine prosecutorial investigators and witnesses, and failure to bring forward expert testimony" [*Id.* at 9, 18];

- A claim that he was entitled to a competency hearing before the Government could admit his 2010 and 2011 statements to law enforcement [*Id.* at 21];

- An ineffective assistance of counsel claim for failing to "challenge the integrity of the prosecution's case . . . when it moved to interfere and impose upon the legal autonomy and independent standing of the State of Oklahoma" [*Id.* at 24]; and

- A prosecutorial misconduct claim for "neglect[ing] or ignor[ing]" treaties between the United States and Indian tribes, which according to Defendant, provides for "the exclusive jurisdiction of Indians and Tribal Members on and in Indian Country" and "exclude[s] the federal government of such jurisdictional control or authority" [*Id.* at 26].

In contrast, Defendant's Amended Motion asserted only seven claims, all of which are listed and compared below.

**A. Ineffective Assistance of Counsel for Failing to Challenge Jurisdiction Based on the Victim's Indian Status**

In his Amended Motion, Defendant argues the Government had to prove the victim's Indian status at the time of the offense for the Court and the Government to have "jurisdiction." Dkt. No. 94 at 1-3. Because the victim obtained a Certificate Degree of Indian Blood ("CDIB") several years after he sexually abused her, Defendant contends the Government could not have proved she was an Indian in 2010. *Id.* Defendant thus believes counsel should have challenged this "jurisdictional" infirmity. *Id.* Defendant also argues his plea was "unknowing and involuntary" because counsel did not advise him of this alleged jurisdictional defect prior to his plea. *Id.* at 2.

However, Defendant did not raise this failure to challenge jurisdiction theory in his Original Motion. At most, he argued counsel failed to challenge evidence obtained by state law enforcement without jurisdiction or challenge the Government's "interference" with the State of Oklahoma's "legal autonomy and independent standing." Dkt. No. 78 at 9-13, 22, 24. But these arguments would have concerned *McGirt*'s effect on the good-faith exception to the exclusionary rule or discussions about the State of Oklahoma's sovereignty. Those underlying facts and arguments are distinct from this amended claim, which implicated their conversations about the

victim's (1) Indian blood and (2) tribal or federal recognition as an Indian in 2010. This new theory does not relate back.

The same reasoning applies to his failure to advise theory. True, Defendant argued in his Original Motion that counsel failed "to communicate much of the facts, and virtually none of the defense strategy intended." Dkt. No. 78 at 17. But Defendant blamed counsel for failing to advise that evidence obtained by the State of Oklahoma could have been suppressed. *See id.* at 11 (stating that counsel failed to realize that "there exists an argument for 'fruit of the poisonous tree' upon evaluating the non-jurisdictional evidence from Oklahoma"); *id.* at 12 ("[Counsel] was aware that the *McGirt* ruling negated all such jurisdictional grounds supporting any such evidence. Such knowledge by counsel demanded action."); *id.* at 16 ("[T]he attorney failed to consider the likelihood of 'reasonable doubt' by a jury of peers upon presentment of the facts associated with this illegal search and seizure, and tainted evidence or no evidence at all, and the possibility that under cross examination, discrepancies in the findings would prove to be persuasive in undermining the prosecution and its forensic findings."). He did not allege that counsel failed to advise him about the victim's Indian status. And counsel's knowledge of evidence relevant to the victim's Indian status and his communications with Defendant about that evidence are distinct from conversations about suppressing evidence collected by the State of Oklahoma. So, this latter theory does not relate back either.

Nevertheless, Defendant argues his actual innocence should excuse his untimeliness. True, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). This requires Defendant to provide new, reliable evidence affecting his "factual innocence, not mere legal insufficiency" of his conviction. *Bousley v. United*

*States*, 523 U.S. 614, 615 (1998). But Defendant pled guilty to sexually abusing the victim and even admitted in his plea agreement and at his plea hearing that "at the time of the offense, S.S., [was] an Indian." Dkt. Nos. 42 at 2; 72 at 27-29. So, his "actual innocence is precluded by that guilty plea." *Hilburn v. Rankins*, No. 23-7050, 2024 WL 277683, at *3 (10th Cir. Jan. 25, 2024) (citing *United States v. Rising*, 631 F. App'x 610, 617 (10th Cir. 2015)).

To overcome this barrier, Defendant argues his counsel's deficient performance rendered his plea involuntary and unknowing. But, a claim "that his guilty plea was induced by his constitutionally ineffective counsel is a claim of legal innocence rather than of factual innocence." *Jolly v. Gammon*, 28 F.3d 51, 54 (8th Cir. 1994); *see also Laurson v. Leyba*, 507 F.3d 1230, 1233 (10th Cir. 2007) ("A claim that his guilty plea was involuntary does not assert that he did not commit the crime to which he pleaded guilty."). And claims of legal innocence do not establish actual innocence. *See Bousley*, 523 U.S. at 615. Because Defendant fails to assert actual innocence, he cannot bypass the one-year statute of limitations.[3] This amended claim is dismissed.

**B. Lack of Subject-Matter Jurisdiction**

Next, Defendant tries an alternative approach—instead of challenging jurisdiction through ineffective assistance of counsel, he argues the Court lacked subject-matter jurisdiction because

---

[3] This argument would fail even if the claim was timely. Until September 2025, "it remain[ed] an open question in our Circuit whether the government must prove that a defendant was recognized as an Indian *at the time of the offense*" under 18 U.S.C. § 1153. *United States v. Hatley*, 153 F.4th 1112, 1121 (10th Cir. 2025) (emphasis in original). And the Tenth Circuit has explicitly left this question open for § 1152 prosecutions. *See United States v. Hebert*, 159 F.4th 777, 781 n. 4 (10th Cir. 2025), *reh'g en banc granted, opinion vacated sub nom. United States v. Ruiz*, 174 F.4th 1253 (10th Cir. 2026). So, during Defendant's plea negotiations, whether the Government had to prove the Defendant *or* the Victim was an Indian "at the time of the offense" under § 1152 was an open question and remains so. Because "clairvoyance is not a required attribute of effective representation," *Bullock v. Carver*, 297 F.3d 1036, 1052 (10th Cir. 2002), and because counsel is not required to "conceive, research, and raise every novel argument that has a chance to prevail," *United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022), this allegation does not show that counsel performed deficiently.

the Government would have allegedly failed to prove the victim's Indian status at the time of the offense. Dkt. No. 94 at 4. Although his plea agreement contains a collateral-attack waiver, and although he failed to raise this issue on direct appeal or in his Original Motion, he argues this claim "can never be waived" and "can be raised at anytime" because it allegedly relates to the Court's subject-matter jurisdiction. Dkt. No. 107 at 2.

Defendant is incorrect. "[T]he Indian/non-Indian statuses of Defendant and his victim[ ] are jurisdictional only in the sense that in the absence of those elements, no federal crime exists." *United States v. Walker*, 85 F.4th 973, 979 (10th Cir. 2023) (quoting *United States v. Prentiss*, 256 F.3d 971, 982 (10th Cir. 2001) (en banc), *overruled in part on other grounds by United States v. Cotton*, 535 U.S. 625 (2002). In other words, the Government must prove Indian status as "an essential element of offenses charged," *United States v. Harper*, 118 F.4th 1288, 1296 (10th Cir. 2024), but failing to prove such an element "is not jurisdictional in the sense that it affects a court's subject matter jurisdiction," *Prentiss*, 256 F.3d at 982 (quotations omitted). Thus, "[D]efendant's claim is really an insufficiency of the evidence argument," which is waivable. *United States v. Tony*, 637 F.3d 1153, 1159 (10th Cir. 2011) (holding that defendant waived § 2255 challenge to the sufficiency of the Government's "Indian Country"). And, as stated above, this argument is untimely. So, this amended claim is dismissed.

**C. Federal Collusion with "State Authorities"**

In his third amended claim, Defendant again attacks this Court's jurisdiction based on the victim's Indian status. But this time, Defendant alleged the Government "collud[ed] with state authorities" to manufacture evidence related to her Indian status. Dkt. No. 94 at 4. However, Defendant did not raise these allegations in his Original Motion, nor is he factually innocent. Accordingly, this amended claim is dismissed.

**D. Vindictive Prosecution**

Next, Defendant argues the Government prosecuted him in retaliation for challenging his state conviction under *McGirt*. Dkt. No. 94 at 5-6. Again, Defendant did not raise this issue in his Original Motion, nor is he factually innocent. Therefore, this amended claim is dismissed.

**E. Violation of Fed. R. Crim. P. 11(c)(5)**

Defendant also believes the Court violated Federal Rule of Criminal Procedure 11(c)(5) when, at sentencing, it imposed lifetime supervision and "17 new conditions" of supervised release that "were never mentioned in the written [Rule 11(c)(1)(C) plea] agreement, never discussed at the plea hearing, and never agreed to by [Defendant]." Dkt. No. 94 at 6-7. In his Original Motion, Defendant argued that counsel failed to "object to enhancements and allegations of both the plea and the [presentence investigation report]." Dkt. No. 78 at 11. Although Defendant framed his original claim as one for ineffective assistance of counsel, this amended claim seemingly touches on the same plea agreement, presentence investigation report, sentencing hearing, and supervision conditions. Because "the new claim is based on the same facts as the original pleading and only changes the legal theory," this claim relates back to his Original Motion. *Mayle v. Felix*, 545 U.S. 644, 664 n. 7 (2005).

**F. Ineffective Assistance of Counsel for "Abandoning" Defendant's Motion to Suppress and Failing to Preserve the Suppression Issue in the Plea Agreement**

Penultimately, Defendant asserts another amended ineffective assistance of counsel claim related to his "meritorious" motion to suppress. Dkt. No. 94 at 7. That motion primarily argued the good-faith exception did not allow state law enforcement to search or seize any evidence against him in 2010 and 2011. Dkt. No. 27. According to Defendant, counsel told him the Court would probably deny this suppression motion and that pleading guilty was his "best option." Dkt. No. 94 at 8. Defendant believes counsel erred in persuading him to plea guilty despite the

"meritorious, case-dispositive motion" and failing to "negotiate preservation of the issue for appeal." *Id.* Defendant raised nearly identical arguments in his Original Motion. *See* Dkt. No. 78 at 10-13, 22. So, this claim relates back to his Original Motion.

**G. Default Judgment Based on the Government's "Abandonment"**

Lastly, Defendant acknowledges that the Government responded to his Original Motion, but he contends the Government "raised only waiver and procedural-default arguments" instead of "address[ing] the substance of any jurisdictional claim." Dkt. No. 94 at 8. Thus, Defendant argues the Government has "abandoned" Defendant's original claims, which according to him, warrants default judgment against the Government and vacatur of his conviction. However, courts within the Tenth Circuit generally hold that "[d]efault judgment is not an available procedural tool for petitioner in a habeas corpus case." *Blaurock v. Kansas*, No. 15-3274, 2016 WL 5410828, at *3 (D. Kan. Sept. 28, 2016) (citing *Stines v. Martin*, 849 F.2d 1323, 1324 (10th Cir. 1988); *Logsdon v. Attorney Gen. of Kansas*, No. 08-3227, 2009 WL 2567773, at *1 (D. Kan. Aug. 19, 2009)); *see also Sparrow v. United States*, 174 F.R.D. 491, 493 (D. Utah 1997). Furthermore, even if the Court could enter default judgment in his favor, it would be inappropriate here because the Government has responded to every motion in which the Court requested a response, including responses to Defendant's Original Motion, his Motion for Production of Discovery, and his Amended Motion. *See* Dkt. Nos. 83, 91, and 106. Accordingly, the Government has not "abandoned" any of Defendant's claims—original or amended. So, this "claim" is dismissed.

* * *

One final note—even though "amended pleadings [generally] supersede original pleadings," there is an exception "where a party evinces an intent for the amended pleading to supplement rather than supersede the original pleading." *Braden v. United States*, 817 F.3d 926,

930 (6th Cir. 2016) (holding that district court erred when it treated a pro se § 2255 petition as superseded by appointed counsel's subsequent § 2255 petition); *see also United States v. Hisey*, 12 F.4th 1231, 1240 (10th Cir. 2021) (citing *Braden* when instructing a lower court to determine whether a pro se § 2255 petition was superseded or supplemented by an appointed attorney's subsequent § 2255 petition). The Court finds a supplementary intent here. Indeed, in his motion for leave to file his Amended Motion, Defendant stated that "[t]he proposed First Amended motion does not assert new claims; it expands and clarifies the original grounds." Dkt. No. 93 at 1. Further, in his Amended Motion, Defendant argued that "[n]ew evidence and intervening authority expand every original ground" and that "[e]ach ground is reproduced exactly as filed." Dkt. No. 94 at 1. Throughout his Amended Motion, he also repeatedly distinguished between "original facts," "new sub-facts," and "new supporting facts." *See, e.g.*, *id.* at 3, 5. He also included multiple phrases at the beginning or end of each amended claim such as "[c]ontinue with other grounds as previously drafted, fully expanded," and "verbatim as originally filed." Based on these remarks, the Court finds he intended to supplement—rather than supersede—his Original Motion.

Thus, two of Defendant's amended claims—his Rule 11(c)(5) and his motion to suppress claims—survive this step of the Court's analysis. And, because the amended claims supplement his Original Motion, the Court will consider those amended claims alongside his unamended, original claims.

## II. DEFENDANT'S PLEA AGREEMENT BARS MOST OF HIS CLAIMS.

Next, the Government argues that a waiver in Defendant's plea agreement, which states that he "waives the right to collaterally attack [his] conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel," bars all of Defendant's original and amended claims. Dkt. Nos. 83 at 13-17; 106 at 6 (both discussing Dkt. No. 42 at 4).

This waiver is enforceable if "(1) the challenge falls within the scope of the waiver provisions; (2) the waiver was knowing and voluntary; and (3) enforcement does not result in a fundamental miscarriage of justice." *United States v. Rivers*, 495 F. App'x 915, 917 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325–27 (10th Cir. 2004) (en banc) (per curiam)). Ultimately, three of his claims—one amended and two original—survive this waiver. The rest are dismissed.

**A. Most of Defendant's claims are waivable.**

When habeas petitioners have pled guilty, they have "one avenue to pursue pre-plea constitutional violations—ineffective assistance of counsel that causes their pleas to be involuntary and unknowing." *United States v. Spaeth*, 69 F.4th 1190, 1206 (10th Cir. 2023) (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973); *Brady v. United States*, 397 U.S. 742, 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 768 (1970)). In other words, a guilty plea waives all pre-plea constitutional claims a defendant may have except for claims challenging counsel's representation in negotiating or entering the plea or the waiver. *Id.*; *see also United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001).

Defendant asserts two claims that allege ineffective assistance related to his plea and/or waiver. These are:

- An amended/original ineffective assistance of counsel claim for erroneously urging Defendant to plead guilty despite a "meritorious" motion to suppress and failing to "negotiate preservation of the [suppression] issue for appeal" in his plea agreement[4] [Dkt. No. 94 at 8]; and

[4] In his Original Motion, Defendant argued counsel failed to "challenge terms and conditions set forth in [his] plea." Dkt. No. 78 at 9, 17. He did not allege which specific terms and conditions in his plea counsel should have challenged. However, in his Amended Motion, he argued that counsel failed to negotiate for preservation of the suppression issue for appeal. Thus, his Amended Motion supplemented this original claim.

- An original ineffective assistance of counsel claim for failing "to communicate much of the facts, and virtually none of the defense strategy intended" [Dkt. No. 78 at 9, 11-12, 15-17].

These claims fall outside the scope of his collateral-attack waiver. Thus, the Court will analyze their merits in Part III of this Opinion

Defendant also asserts several pre-plea claims that do not allege ineffective assistance of counsel related to his guilty plea. These include:

- An original ineffective assistance of counsel claim for failing "to bring forward forensic or verifiable testing of [Defendant's] computer," which contained sexually explicit images of minors, including the Victim [Dkt. No. 78 at 9];

- An original ineffective assistance of counsel claim for failing "to challenge the conviction under a 'laches challenge'" [Dkt. No. 78 at 9-10, 25];

- An original ineffective assistance of counsel claim for "failing to enact a witness management and mitigation strategy including a failure to exact and utilize the 'Confrontation Clause,' failure to cross-examine prosecutorial investigators and witnesses, and failure to bring forward expert testimony" [Dkt. No. 78 at 9, 18];

- An original claim that he was entitled to a competency hearing before the Government could admit his 2010 and 2011 statements [Dkt. No. 78 at 21];

- An original ineffective assistance of counsel claim for failing to "challenge the integrity of the prosecution's case . . . when it moved to interfere and impose upon the legal autonomy and independent standing of the State of Oklahoma" [Dkt. No. 78 at 24]; and

- An original prosecutorial misconduct claim for "neglect[ing] or ignor[ing]" treaties between the United States and Indian tribes, which according to Defendant, provided for "the exclusive jurisdiction of Indians and Tribal Members on and in Indian Country" and "exclude[s] the federal government of such jurisdictional control or authority" [Dkt. No. 78 at 26].

A knowing and voluntary plea bars these claims. *See Spaeth*, 69 F.4th at 1206. So, they shall be dismissed if the remaining *Hahn* elements are satisfied.

Finally, Defendant asserts two *post-plea* claims related to his sentencing. Unlike pre-plea claims, a defendant may assert a post-plea § 2255 claim that is unrelated to the knowing and

voluntary nature of his plea. *See Spaeth*, 69 F.4th at 1212. But these claims can still be waived by plea agreement. *See Cockerham*, 237 F.3d at 1187. Here, Defendant asserts:

- An amended claim that the Court violated Federal Rule of Criminal Procedure 11(c)(5) at sentencing [Dkt. No. 94 at 6-7]; and
- An original ineffective assistance of counsel claim for failing "to object to enhancements and allegations . . . [in] the [presentence investigation report]," failing to "produce relevant case law and precedence showing disparity," and failing to "move for sentence memorandum" [Dkt. No. 78 at 9, 11, 17];

Defendant's amended claim that the Court violated Rule 11(c)(5) at his sentencing falls squarely within his promise not to collaterally attack his sentence. Thus, this Rule 11(c)(5) claim shall be dismissed if the other *Hahn* elements are satisfied. But his other claim must be addressed on the merits because it alleges ineffective assistance of counsel, which is expressly exempted by his collateral-attack waiver.

**B. Defendant's plea was knowing and voluntary.**

The next *Hahn* element requires the Court to examine two factors to determine whether the waiver was knowing and voluntary. First, the Court must "examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." *Hahn*, 359 F.3d at 1325. Second, the Court must determine whether Defendant received "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Id.* "[E]ither the express language of the plea agreement, if sufficiently clear, detailed, and comprehensive, or the probing inquiry of a proper Rule 11 colloquy could be enough to conclude the waiver was knowing and voluntary. But the synergistic effect of both will often be conclusive." *United States v. Tanner*, 721 F.3d 1231, 1234 (10th Cir. 2013). "[T]he defendant . . . bears the burden of demonstrating his waiver was not knowing and voluntary." *Id.* at 1233.

Defendant fails to overcome his burden. Indeed, Defendant acknowledged in his plea agreement that he knowingly and voluntarily entered into the agreement:

> I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it without reservation. No promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement and plea supplement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it. I do this of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this plea agreement.

Dkt. No. 42 at 14; *see also id.* at 5 (stating that "defendant expressly acknowledges that counsel has explained defendant's trial, sentencing, appellate and post-conviction rights; that defendant understands these rights; and that defendant knowingly and voluntarily waives and relinquishes those rights as set forth above"). So, this first prong is satisfied.

Defendant also received a sufficient colloquy under Federal Rule of Criminal Procedure 11. Indeed, at his plea hearing, the Magistrate Judge questioned Defendant in open court and determined that Defendant was competent to enter an informed plea [Dkt. No. 72 at 5-9, 29]; that he understood the charges against him and the range of punishment [*id.* at 9-13]; that he understood his rights to a speedy jury trial, to an attorney, to receive and confront adverse witnesses, to compel evidence in his favor, and to not be compelled to self-incrimination, and that he understood the consequences of waiving those rights [*id.* at 14-16, 21-22, 26-27]; that his guilty plea was "voluntar[y] and completely of [his] own free choice" and that he had not been "forced or threatened in anyway or promised anything by any person to plead guilty" [*id.* at 17-18, 30]; that he read and signed the plea agreement [*id.* at 20]; that there was an adequate factual basis for the plea [*id.* at 21, 27-29]; that he understood he waived his right to post-conviction relief beyond filing a petition for ineffective assistance of counsel [*id.* at 19-20, 22-23]; and that he was satisfied with counsel's performance [*id*. at 26].

Defendant does not challenge the sufficiency of this colloquy. Nor does he contend that counsel forced him to plead guilty or made a "material misrepresentation" about his constitutional

rights that impacted his decision to plead. *See United States v. Swan*, 91 F.4th 1052, 1056 (10th Cir. 2024). Instead, Defendant argues his counsel's ineffective assistance made his plea unknowing and involuntary. But, as explained below, those arguments are meritless. Because he offers no other allegations or evidence to the contrary, the Court finds Defendant's waiver knowing and voluntary.

**C. Enforcement would not result in a fundamental miscarriage of justice.**

Finally, the Court must determine whether enforcement of the waiver would result in a fundamental miscarriage of justice. *See Hahn*, 395 F.3d at 1327. A "miscarriage of justice" occurs *only* where: (1) "the district court relied on an impermissible factor such as race;" (2) "ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid;" (3) "the sentence exceeds the statutory maximum;" or (4) "the waiver is otherwise unlawful." *Id.* "This [fourth exception] looks to whether "the waiver is otherwise unlawful . . . not to whether another aspect of the proceeding may have involved legal error." *United States v. Smith*, 500 F.3d 1206, 1213 (10th Cir. 2007). A waiver is "otherwise unlawful" if an error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.*

None of these scenarios are present. First, Defendant does not assert the Court relied on an impermissible factor when it sentenced him. Second, although he asserts ineffective assistance of counsel those claims are meritless. Third, he does not allege that his sentence exceeded the statutory maximum, nor did he receive such a sentence. Finally, to the extent Defendant argues the Government "lacked jurisdiction" to enter into the plea agreement because it could not prove the victim's Indian status, that argument attacks the sufficiency of evidence, not the lawfulness of the plea waiver. For these reasons, Defendant fails to show a fundamental miscarriage of justice if the waiver is enforced.

* * *

Because each *Hahn* element is met, Defendant's guilty plea and his collateral-attack waiver bar all but three ineffective assistance of counsel claims. These are (1) an amended ineffective assistance of counsel claim for erroneously urging Defendant to plead guilty despite a "meritorious" motion to suppress and failing to preserve the suppression issue in his plea agreement; (2) an original ineffective assistance of counsel claim for failing "to communicate much of the facts, and virtually none of the defense strategy intended;" and (3) an original ineffective assistance of counsel claim alleging that counsel failed to adequately mitigate his sentence. The Court will examine the merits of these three claims. [5]

## III. DEFENDANT'S SURVIVING CLAIMS ARE DISMISSED ON THE MERITS.

For his three remaining claims to survive dismissal, Defendant must show, under *Strickland v. Washington*, that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. 466 U.S. 668, 687-88 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. As such, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.*

Defendant must also show that counsel's deficient performance prejudiced his defense. *Id.* at 687. "In the guilty-plea context, *Strickland*'s prejudice prong ordinarily requires a defendant to demonstrate 'there is a reasonable probability that, but for [his] counsel's errors, he would not have

[5] The Government also argues Defendant's claims must be dismissed because he did not raise them on direct appeal. Dkt. Nos. 83 at 11-13; 106 at 6. But generally, "[t]he procedural default rule does not apply to claims of ineffective assistance of counsel regardless of whether the claim could have been raised on direct appeal." *United States v. Walters*, 163 F. App'x 674, 678 (10th Cir. 2006). So, the Court will proceed to the merits of Defendant's remaining claims.

pleaded guilty and would have insisted on going to trial.' " *United States v. Dominguez*, 998 F.3d 1094, 1111 (10th Cir. 2021) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Similarly, "[t]o show prejudice in the context of ineffective assistance at sentencing, a defendant must show a reasonable probability that, but for incompetent counsel's errors, [he] would have received a lesser sentence." *United States v. Messner*, 37 F.4th 736, 741 (1st Cir. 2022).

### A. Ineffective Assistance of Counsel for "Abandoning" Defendant's Motion to Suppress and Failing to Preserve the Suppression Issue in the Plea Agreement

The Court will start with Defendant's amended ineffective assistance of counsel claim concerning his motion to suppress. Dkt. No. 94 at 7. As a reminder, that motion to suppress primarily argued the good-faith exception did not allow state law enforcement to search or seize any evidence against him in 2010 and 2011. Dkt. No. 27. According to Defendant, counsel told him the Court would probably deny this suppression motion and that pleading guilty was his "best option." Dkt. No. 94 at 8. Defendant believes counsel erred in persuading him to plead guilty despite the "meritorious, case-dispositive motion" and failing to "negotiate preservation of the issue for appeal." *Id.* Because of these errors, Defendant argues his plea was "involuntary and unknowing." *Id.*

However, Defendant does not allege that counsel made a "material misrepresentation" about this motion that impacted his decision to plead. *See Swan*, 91 F.4th at 1056. Nor does he contend that counsel forced him to withdraw this motion to suppress. And a defendant cannot establish deficient performance simply because counsel "strongly urged" him to plead guilty, especially when counsel believed a guilty plea was in the defendant's best interest. *Fields v. Gibson*, 277 F.3d 1203, 1216 (10th Cir. 2002). Instead, it seems that Defendant retroactively disagrees with counsel on whether the motion to suppress would have been successful. *See* Dkt. Nos. 78 at 11, 15-16. And he now tries to void his plea by arguing that disagreement somehow

made it involuntary and unknowing. Such allegations are insufficient to void his plea, much less establish ineffective assistance of counsel.

Furthermore, "it is open to significant doubt whether the better-plea theory is a cognizable theory" under *Strickland*. *Dominguez*, 998 F.3d at 1116 (collecting cases). Indeed, several lower courts have even reasoned that "the failure to negotiate a different plea agreement is more accurately characterized as trial strategy that does not constitute ineffective assistance of counsel." *United States v. Garcia*, No. 01-3029, 2001 WL 579817, at *3 (D. Kan. May 23, 2001); *see also United States v. Kitterman*, No. CR 02-2278, 2006 WL 8444446, at *2 (D.N.M. Mar. 29, 2006). And even if it was a cognizable theory, Defendant does not allege that he asked counsel to preserve this suppression issue in his plea agreement. Nor does Defendant provide any facts showing "it was reasonably probable that the government would have given him a more favorable plea agreement." *Dominguez*, 998 F.3d at 1118.

Finally, Defendant presumes his motion to suppress would have been granted or affirmed on appeal. However, when Defendant filed his motion to suppress, Judge Ronald White had already held that the good-faith exception to the exclusionary rule applied to pre-*McGirt* state investigations, which the Tenth Circuit later affirmed in an unpublished opinion. *United States v. Patterson*, No. CR-20-71-RAW, 2021 WL 633022 (E.D. Okla. Feb. 18, 2021), *aff'd*, No. 21-7053, 2022 WL 17685602 (10th Cir. Dec. 15, 2022)). Then, in a published opinion, the Tenth Circuit held that the good-faith exception to the exclusionary rule applies to searches conducted within Indian country under warrants issued by Oklahoma state court judges who mistakenly presumed that the location of the search was within Oklahoma's jurisdiction. *See United States v. Pemberton*, 94 F.4th 1130 (10th Cir. 2024).

So, in hindsight, counsel was probably correct that Defendant's *McGirt*-based suppression argument would have been futile. And given the evidence obtained by state law enforcement—which included the victim's description of Defendant's sexual abuse and Defendant's pre-charge admission that he possessed pornographic photos of her—it was reasonable for counsel to tell Defendant that pleading guilty was his "best option." This was especially true where counsel negotiated a Rule 11(c)(1)(C) plea agreement providing 300 months imprisonment, even though Defendant's guideline range was 360 months to life. *See* Dkt. No. 51 at 14. Consequently, Defendant does not show deficient performance. Nor does he show "a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Dominguez*, 998 F.3d at 1111. This ineffective assistance of counsel claim is dismissed.

**B. Ineffective Assistance for Failing to Communicate "Facts" and "Defense Strategy"**

Next, in his Original Motion, Defendant accused counsel of failing "to communicate much of the facts, and virtually none of the defense strategy intended, therefore offering no intellectual choice among alternative courses of action" on whether to plead or proceed to trial. Dkt. No. 78 at 17 (quotations and citations omitted). Elsewhere in his Original Motion, he also stated "it is likely that this Defendant may have moved for jury trial rather than accept the terms of a jaded and prejudicial plea had he been equipped with all of the facts and Discovery." *Id.* at 11. However, according to him, "[n]o such discussion ever took place in evaluating the possible outcome of either scenario." *Id.*

Most of these allegations are conclusory and provide no factual allegations supporting an ineffective assistance of counsel claim. And even his more specific allegations fail to satisfy either *Strickland* prong. For example, Defendant occasionally references counsel's failure to tell him his motion to suppress would have been successful. *See*, *e.g.*, Dkt. No. 78 at 11 ("The Plea v. Trial

consideration would require this attorney . . . [to] evaluat[e] the weight of foundational evidence or lack thereof, and in particular, realizing that there exists an argument for 'fruit of the poisonous tree' upon evaluating the non-jurisdictional evidence from Oklahoma."); *id.* at 12 ("[Defendant's] attorney was aware that the *McGirt* ruling negated all such jurisdictional grounds supporting any such evidence. Such knowledge by counsel demanded action."); *id.* at 15 ("[H]ad the Defendant been advised to consider a jury trial option by defense counsel, there would exist an opportunity to impeach the law enforcement component upon disclosure of an illegal Search and Seizure with no viable Search Warrant."). But this is simply another way to assert his ineffective assistance claim related to his motion to suppress. For the same reasons as above, these allegations do not establish ineffective assistance here either.

He also faults counsel for failing to tell him about a laches defense prior to his plea. *See, e.g.*, *id.* at 15 ("[C]ounsel missed an opportunity to advise [Defendant] in considering the viability of moving to a jury trial option, especially in the wake of non-jurisdictional evidence from Oklahoma, a 'laches' opportunity, and an 11-C-1(C) plea, finally, the potentiality for 'reasonable doubt' as likely."); *id.* at 17 ("[U]pon Prestel's defense strategy, his counsel should have weighed the opportunity to consider the likelihood of "reasonable doubt," or at a minimum, the impeachment of certain evidence qualifying as non-jurisdictional in Oklahoma, and neglected upon a 'laches' challenge as being a decade late in conviction . . . ."). However, "laches is a line of defense that usually may not be asserted against the United States." *Ute Indian Tribe of the Uintah v. Myton*, 835 F.3d 1255, 1263 (10th Cir. 2016). And to the extent Defendant asserts a statute of limitations defense, "[t]here is no statute of limitations for § 2241(c)." *United States v. Webster*, 797 F.3d 531, 534 (8th Cir. 2015). So, counsel cannot be faulted for failing to advise Defendant about a defense that was unavailable.

Finally, Defendant faults counsel for failing to discuss the potential for "reasonable doubt." *See* Dkt. No. 78 at 15, 17. But he alleges nothing further, such as which facts or elements the jury would have doubted or how that would have changed his decision to plead. Accordingly, these conclusory statements are insufficient to establish ineffective assistance. For these reasons, this ineffective assistance of counsel claim is dismissed.

**C. Ineffective Assistance of Counsel Related to Defendant's Sentencing**

Defendant's last surviving claim is an original ineffective assistance of counsel claim alleging that counsel failed "to object to enhancements and allegations . . . [in] the [presentence investigation report]," to "produce relevant case law and precedence showing disparity," and to "move for sentence memorandum." Dkt. No. 78 at 9, 11, 17. However, Defendant signed a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), which allowed him and the Government to "agree that a specific sentence or sentencing range is the appropriate disposition of the case." Fed. R. Crim. P. 11(c)(1)(C). Pursuant to that agreement, Defendant and the Government agreed to a term of imprisonment of 300 months. Dkt. No. 42 at 8. So, once the Court accepted that agreement, the Court had to sentence him to 300 months imprisonment under Rule 11(c)(1)(C). Any potential objection or motion for downward variance from counsel would not have allowed for a lower term of imprisonment under this Rule.

True, "[t]he agreement did not specify the term or conditions of [Defendant's] supervised release." *Prestel*, 60 F.4th at 618. So, counsel could have argued why Defendant should receive a lesser term of supervised release with fewer conditions. But Defendant does not allege what those arguments should have been, nor does he allege how presentation of those arguments likely would have resulted in a lesser term of supervised release with fewer conditions. Thus, his conclusory allegations are insufficient to establish ineffective assistance of counsel.

* * *

All of Defendant's claims—original and amended—are dismissed as untimely, waived by plea agreement, or meritless. With that in mind, the Court will briefly address two other matters.

First, the Court must hold an evidentiary hearing on Defendant's Motions "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Here, the briefing and record conclusively show that Defendant is not entitled to relief. Therefore, an evidentiary hearing is unnecessary.

Second, a criminal defendant may not appeal a final order in a § 2255 proceeding unless he obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). He may obtain a certificate of appealability if he has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He has not done so. Furthermore, when a district court dismisses the matter on procedural grounds, the defendant must demonstrate that "jurists of reason would find it debatable whether the [§ 2255 motion] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, reasoned jurists would not debate whether Defendant's Motions state a valid constitutional claim nor whether the Court's procedural rulings were correct. Consequently, the Court declines to issue a certificate of appealability.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motions to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 [Dkt. Nos. 77-78, 94] are DENIED.

Dated this 19th day of August, 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE